**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **PARUS HOLDINGS INC.,**<br>      **Plaintiff,**<br><br>            *v.*<br><br>**GOOGLE, LLC,**<br>            **Defendant.** | **6:21-cv-0571-ADA** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Came on for consideration this date is Defendant Google, LLC's Opposed Motion to Transfer Venue to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a), filed on May 20, 2022. ECF No. 45 (the "Motion"). Plaintiff Parus Holdings Inc. ("Parus") filed an opposition September 2, 2022, ECF No. 68, to which Defendant Google, LLC ("Google") replied on September 16, 2022. ECF No. 72. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **GRANTS** Google's Opposed Motion to Transfer Venue to the Northern District of California under 28 U.S.C. § 1404(a).

## I. BACKGROUND

On June 4, 2021, Parus filed a complaint against Google, accusing it of infringing three patents: U.S. Patent No. 6,721,705 (the '705 Patent), U.S. Patent No. 7,881,941 (the '941 Patent), and U.S. Patent No. 7,386,455 (the '455 Patent) (collectively, "the Asserted Patents"). ECF No. 1. On August 11, 2021, Parus filed an amended complaint asserting Google infringed the same Asserted Patents. *See* ECF No. 23 (the "Amended Complaint"). Parus alleges that Google infringes the Asserted Patents by acting through the Android operating system, including Google Assistant, as implemented on Google devices, including Pixel devices, Nest devices, Chromecast devices, Pixelbook devices, and Fitbit devices (the "Accused Products"). *Id*. ¶ 24.

Parus claims that the Asserted Patents relate to "robust and highly reliable" systems for users to search the internet using voice-enabled devices. *Id*. ¶ 17. The '705 Patent and the '941 Patent are both purportedly concerned with how to determine from which website to retrieve information in response to a speech command from a pre-selected website. *Id*. ¶¶ 20–21. Similarly, the '455 Patent is purportedly concerned with controlling online functionality and items in a remote system using audio commands and grammar. *Id*. ¶ 22. According to the allegations in the Amended Complaint, this voice recognition technology is implemented in Google Assistant. *Id*. ¶ 24. Parus accuses certain Google products of infringing the Asserted Patents through their conjunction with Google Assistant. *Id*.

In its Motion, Google claims that:

- Parus is a Delaware corporation with its principal place of business in Bannockburn, Illinois. ECF No. 45 at 2.

- The most relevant witnesses are Google's employees knowledgeable about Google Assistant, most of whom are in NDCA. *Id.* Relevant third-party witnesses and evidence are similarly in NDCA, including Parus's former Chief Technical Officer Salil Pradhan and witnesses knowledgeable about prior art telephonic web browsing systems and intelligent agents that predate Parus's alleged inventions. *Id.*

- Neither Parus nor Google has any relevant connections to this District—Google has no Google Assistant engineers based in the Western District of Texas ("WDTX"), and Parus has no ties to the WDTX. *Id.*

On May 20, 2022, Google filed its Motion. ECF No. 45. Citing, among others, those facts above. *Id.* That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

3

The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A.     Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). This Court finds, and Parus does not contest, that this Action could have been brought in the NDCA. Google has its principal place of business in Mountain View, California, located in the NDCA. ECF No. 45 at 1. Thus, venue is

proper in the NDCA because the NDCA may exercise personal jurisdiction over Google. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because Parus could have filed this case in the NDCA, the Court must consider the private and public interest factors. *Volkswagen II*, 545 F.3d at 315.

### B.    Private Interest Factors

#### 1.    Cost of Attendance and Convenience of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *see also Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 10, 2019). The Fifth Circuit established the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g., id.* at *12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the court transfers the action or not. *See In re Apple Inc.*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be, "rigidly," applied in the context of foreign witnesses); *In re Pandora*

*Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

  *Witnesses in NDCA.* Google contends that this factor favors transfer because relevant witnesses reside in the NDCA rather than this District. *See* ECF No. 45 at 1. Google attached the declaration of Andrew Rope, the Scaled Operations Manager on Google's legal team, in support of its Motion. *See* ECF No. 45-1. In his declaration, Mr. Rope specifically identifies the following Google personnel as having relevant knowledge on certain features of Google Assistant:

- ████████████ leads the "Speech Recognition Modeling team." ████████ ████████████████████████████████████████████████████████████ ████████████████████████████ *Id.* ¶ 4(a).

- ████████████████████████████ leads "Google's core team working on answering questions from Google Assistant users." *Id.* ¶ 4(b).

- ████████████████████████ leads "Google's team working on crawling web pages." *Id.* ¶ 4(c).

- ████████████████████████████████ is "the technical lead of the team that works on home automation." *Id.* ¶ 4(d).

- ████████████████████████████████ is one of the "key finance employees." *Id.* ¶ 4(e).

- ████████████ is the "core Product Marketing Lead for Google Assistant services." *Id.* ¶ 4(f).

According to Mr. Rope, all these team leaders are in Northern California. *See id*. ¶ 4(a)–(f). Moreover, he testifies that a majority, if not all, of relevant team members are based in Northern California, and no team members are based in Texas. *Id*. He recites that as of June 2021, ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ . *Id.* ¶ 2.

Parus, though, argues that Google improperly uses privilege as a sword and shield through Mr. Rope's declaration. ECF No. 68 at 8. As to its sword assertion, Parus challenges the completeness of Mr. Rope's investigation and criticizes Google for not disclosing its rationale. *Id*. The issues presented here are square with this Court's opinions on the reliability of Mr. Rope as Google's venue declarant in *Motion Offense, LLC v. Google LLC. See* No. 6:21-CV-00514-ADA, 2022 WL 5027730, at *2 (W.D. Tex. Oct. 4, 2022). In *Motion Offense*, this Court found that Mr. Rope's declaration was credible but limited. *See id.* at 2. Mr. Rope conducted a multi-day investigation, interviewed more than twenty individuals, and attempted to answer his deposition questions directly rather than evasively. *Id*. But this Court determined his investigation was limited because he investigated only technical employees of Google and did not perform an investigation of those in finance, marketing, and other non-technical departments. *Id*. at 3.

This Court similarly addressed arguments about Mr. Rope's credibility as venue declarant in another recent case. *See VoIP-Pal.com v. Google LLC*, No. 6:21-CV-00667-ADA, 2022 WL 2068254, at *6 (W.D. Tex. June 8, 2022) There, this Court found even less evidentiary value in Mr. Rope's declaration and resolved all disputed facts against his declaration. *See id.* The Court found his declaration failed to address whether Mr. Rope tried to locate employees with knowledge about sales, marketing, or finance of the accused products. *See id.* at *5. Mr. Rope never concretely

stated that there were no relevant employees in the WDTX, only that no relevant employees were "known" to be in this District, and he also claimed that he did not rely on any documents in preparing his declaration. *Id.* This Court still found that this factor favored transfer there, when the plaintiff presented no declaration, deposition testimony, or any other evidence to rebut Google's arguments.

Here, Mr. Rope investigated the location of Google employees on key technical, financial, and marketing teams, examining whether the identified team leaders or any members of their teams are in Texas. ECF No. 72 at 4. Google alleges that Mr. Rope's investigation spanned several weeks and included initial and follow-up interviews with team leads and other individuals. *Id*. In total, Mr. Rope interviewed 13 individuals across 21 interviews of around 30-60 minutes each. *Id*. Mr. Rope also reviewed multiple documents in preparing for his declaration and deposition testimony. ECF No. 68-1 at 28:5–29:24. While the Court is skeptical that only six key witnesses have relevant information at a company the size of Google, Mr. Rope's investigation, still is arguably more thorough than the investigation he conducted in *Motion Offense* and in *VoIP-Pal.com.* Thus, the Court is hesitant to agree with Parus's assertion that Mr. Rope's declaration is improperly used as a sword in selecting witnesses. It further declines, as Parus asks, to follow its opinion in *VoIP-Pal.com* and resolve all disputed facts against Mr. Rope's declaration. ECF No. 68 at 1.

That said, the Court still finds some of Mr. Rope's declaration and deposition testimony problematic. Parus asserts that Google's discovery conduct was misleading and obstructionist. ECF No. 68 at 2–5. It argues that Google asserted privilege in Mr. Rope's deposition when asked questions about particular steps in his investigation. ECF No. 68 at 8. Parus also alleges that Mr. Rope does not explain his initial investigation in his declaration and how he first determined the relevancy of the six named witnesses. ECF No. 68 at 8. The Court takes issue with parties who fail

to comply with venue discovery and who fail to describe the methodology used to find relevant witnesses in the transferee forum. To be sure, though, not all Parus's contentions regarding privilege are sound, as it appears the parties agreed somewhat on the scope of what the venue declarant would talk about before his deposition. ECF Nos.72-5–72–6; 69-1–69-2. But the Court also agrees with many of Parus's assertions, including that Google produced anonymized lists of employee profiles that neither Parus nor Mr. Rope had any way to verify. ECF No. 68 at 3 (citing ECF No. 68-1 at 112:7-17) (Though, Parus acknowledges that even the anonymized lists do not reflect any employees in this District. ECF No. 68 at 3.). The lists appear to be internally inconsistent, as they provided the employees' current address and former office location. See ECF 68-3; Ex. 1 at 106:2-14. And Google appears to have disclosed only the direct reports, and not the indirect reports of its named relevant witnesses. ECF No. 68-1 at 95:2-11; 96:9–10; 96:17-98:21; 99:4-18; 105:20–23; 112:10–13; 112:18-114:19; 120:5-121:6. Thus, the Court finds Mr, Rope's testimony to be credible but limited. Even still, if parties believe the opposing party failed to provide discovery that could change the Court's analysis in resolving a motion to transfer, the parties should timely and explicitly seek appropriate relief. Yet Parus failed to raise a dispute with the Court in a motion to compel. The Court cannot now weigh the missing information in its transfer analysis.

Even determining Mr. Rope's testimony to be limited, Parus has not provided evidence to rebut his testimony on relevant witnesses in the NDCA. Indeed, Parus does not dispute that these witnesses have relevant knowledge, only that Google does not provide sufficient insight into what motivated Mr. Rope to take particular steps in his investigation. *See* ECF No. 68 at 8–9. The Court is thus satisfied that the witnesses Mr. Rope identified work from the NDCA, that they have

relevant knowledge, and that the NDCA is a more convenient forum for these personnel and most of their team members.

Parus argues that "regardless of where trial takes place, witnesses living outside of NDCA and this District will need to book flights and hotels." ECF No. 68 at 10. While Parus does not specifically say where these witnesses are located, the Court generally finds that witnesses living far from either district are too remote to have much effect under this factor. *See In re Apple*, 979 F.3d at 1342 (citing *In re Genentech,* 566 F.3d at 1344 ("the 100-mile rule 'should not be rigidly applied' where witnesses 'will be required to travel a significant distance no matter where they testify'); *see also In re Google, LLC*, 2021 WL 4427899, at *4 ("Our cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer"). Mr. Rope testified that Google's witnesses with relevant knowledge predominately live and work in the NDCA. The Court is satisfied that these potential witnesses have "relevant and material information." *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Thus, the Court finds that the convenience of these potential witnesses favors transfer.

*Witnesses in WDTX.* Parus alleges that "numerous current and former Parus employees with knowledge of the company, software engineering, and more live in Texas." ECF No. 68 at 9. Yet, Parus only asserts that it has two employees based in Austin (though one is actually an independent contractor (ECF No. 68-2, 96:14-21)) and that it is looking to hire eight more in the months to come. ECF No. 68 at 2.[1] Those two witnesses are Taj Renua, Parus's CEO, and Alex

---

[1]Parus alleges two other third-party witnesses, former Parus employees, "will testify in Waco." *See* ECF No. 68 at 9–10. Parus argues the relevancy of these witnesses under the "compulsory

Kurganov, an inventor of the Asserted Patents. *See id.* Mr. Reneau confirmed that he relocated to this District as of June 1, 2022, but that Mr. Kurganov was "in the process of moving to Texas" and was supposed to relocate on August 27, 2022. ECF No. 68-2, 48:23-49:2; 101:4-12. Though somewhat unclear whether Mr. Kurganov is definitively in this District, the Court will evaluate the convenience of these witnesses, even though they were not in this District at the time Parus filed its Complaint. *See Lynk Labs, Inc.*, 2022 WL 1593366, at *6 (explaining how post-complaint facts must be disregarded when considering § 1404(a)'s preliminary question, but not when evaluating convenience).

Parus also alleges that Google concealed the identities or relevant witnesses, despite possessing evidence that multiple relevant employees worked from the WDTX at times relevant here. ECF No. 68 at 9 (citing ECF No. 68-1 at 76:14–77:18; 92:15–93:12; 127:7–129:2). The Court is not persuaded by this argument. Mr. Rope was forthcoming in revealing Google employees- ████████████████████████ that temporarily worked from the WDTX and explains that he tried to "chase down any potential connection to Texas." ECF No. 68-1 at 76:17-19; *see also id.* at 92:18-20. Although Mr. Rope cannot remember the exact dates the Google employees worked from the WDTX, he concedes that it was "around that time period" when Parus filed this lawsuit. *Id.* at 77:19-21; *see also id.* at 93:17-20. On both witness's relevancy, Mr. Rope asserts that ██ ██ did not work on Google Assistant. *Id.* at 136:2–19. Parus provides no other evidence showing otherwise. Although Google contests ████████ relevancy, it provides no support for this assertion. ECF No. 72 at 4. Nowhere in Mr. Rope's deposition testimony does he assert that

---

process" factor, so it is unclear whether those witnesses are willing or unwilling. *See id.* Because Parus claims that these witnesses are "located within this District's subpoena power," ECF No. 68 at 10, the Court will evaluate this argument under the "compulsory process" factor. *See infra.* III. B. 2. However, even if these witnesses are willing, the Court is satisfied that it would not change its opinion that the willing witness factor weighs in favor of transfer.

 did not work on the accused functionality, as he does with ██████. Thus, the Court accepts that ██████ is a relevant witness who was temporarily working from the WDTX at the time Parus filed its complaint. Given that it appears ████████████████████ ████████████████████████████, the Court accords only some weight to this witness.

 *Conclusion*. While Google identifies six Google team leaders with relevant and material knowledge working in the NDCA. Parus provides only one Google employee who was temporarily in the WDTX at the time Parus filed this lawsuit. Parus also identifies its CEO and an inventor of the Asserted Patents as relevant witnesses in the WDTX. Thus, the Court finds that the cost of attendance and convenience of willing witnesses factor favors transfer.

2. <u>Availability of Compulsory Process</u>

 Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness"). Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

Google identified four founding executives of three companies that sold relevant prior art systems—from Tellme Networks, Be Vocal, Inc., and General Magic—that it believes are most likely to have relevant information on the systems at issue. ECF No. 45 at 9. Google explains that when Parus filed the Asserted Patents, these companies had released telephonic browsing systems with phone numbers that users could call to obtain web information — the type of system described in the specification of Parus's Asserted Patents. ECF No. 45 at 3. Google also identifies four specific developers of prior art systems. ECF No. 45 at 3. It argues that these third parties are within the subpoena power of NDCA but not within this Court's subpoena power. *Id*. Parus does not dispute the relevancy of these witnesses but challenges Google's failure to show that these witnesses would be unwilling to attend trial. ECF No. 68 at 7. But the Federal Circuit holds that that is not the law. *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) ("when there is no indication that a non-party witness is willing, the witness is presumed to

be unwilling and considered under the compulsory process factor"). And while this Court will not categorically reject prior art witnesses without considering the facts of the case, it discounts them because prior art witnesses rarely appear at trial. *In re Hulu*, *LLC*, 2021 WL 3278194, at *3. Thus, the Court accords some weight to the four named prior artists and four founding executives.

Google also names Parus's former Chief Technical Officer ("CTO"), Salil Pradhan, as a relevant third-party witness, and he lives in San Jose, California. ECF No. 45 at 3. Google asserts that he likely has knowledge of the operation and marketing of Parus's products and how Parus's products allegedly practice the patents because he was Parus's CTO at the time Parus filed its first lawsuit against Google. ECF No. 45 at 6. Parus contends that Google failed to show that Mr. Pradhan possesses any relevant information or documents, given that he only provided part-time consulting services to Parus as CTO. ECF No. 68 at 7–8. When challenged, Google replies that even if Mr. Pradhan only offered part-time consulting services, he "has recent knowledge regarding Parus's technology and operations." ECF No. 72 at 3. Google's only evidence it attaches to support this appears to be Mr. Pradhan's online resume. ECF No. 46-1. The Court is skeptical of this witnesses' relevancy, given that Google only menially articulates the testimony it expects to elicit from Mr. Pradhan. Thus, the Court attributes little weight to this witness.

Parus identifies three former Parus employees with knowledge of the company and software engineering that live in Texas. ECF No. 68 at 9. Pavel "Paul" Leonovich, a senior software engineer familiar with the Webley[2] voice application development, resides in the Austin area. *Id.* John Ackelbein, former VP of sales at Webley, possesses knowledge of the features of the Webley personal assistant and was responsible for all business-to-business sales and resides in

---

[2] Parus explains that Parus was originally called "Webley Systems, Inc." and many of its earliest products carry that name. ECF No. 68 at 9 n.1.

the Dallas area. *Id.* Hal Poel, former marketing executive of Webley, possesses relevant knowledge related to the telecom features of the Webley product and resides in Sugar Land. *Id.* Parus also identifies six prior artists within the Dallas-Fort Worth Metroplex. ECF No. 68 at 10.

Yet Parus cites only to LinkedIn to connect the named third-party witnesses with the Accused Products. *See* ECF Nos. 69-8; 69-9; 69-25; 69-26; 69-27; 69-28; 69-29; 69-30; 69-31. It provides no basis for its assertions that the Webley former employees or the potential prior art witnesses are relevant. *See id.* This is generally not enough to show that these witnesses possess knowledge relevant to the alleged infringement. *In re Google LLC*, 2021 WL 4427899, at *7 (allocating no weight to a potential witness that the plaintiff found on LinkedIn because plaintiff "was not at all specific about what testimony it expected to elicit from [that witness], or even if he possesses knowledge of the facts relevant to this infringement action"); *see also Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *20 (W.D. Tex. May 11, 2022) ("Gauging and articulating the relevance of a party's personnel to a particular case—especially personnel from a company the size of Apple—based only on vague LinkedIn profiles is a challenge").

Google challenges that Parus has failed to identify third-party witnesses likely to testify at trial. ECF No. 72 at 3. Given that Parus provides no other evidence or explanation linking the prior artists to the alleged infringement, the Court is inclined to agree. Indeed, Parus includes only one sentence identifying these witnesses in its response. ECF No. 68 at 10. The Court will accord no weight to the prior artists identified only through LinkedIn profiles. As with Mr. Pradhan, the Court will accord little weight to the former Webley employees, given that Parus provides some specification as to what testimony it expects to elicit from these witnesses. ECF No. 72 at 9–10.

*Conclusion.* Google identified four prior artists, four founding executives of companies that sold prior art systems, and Parus's former CTO, Mr. Pradhan, all located within the subpoena power of the NDCA. Parus identified three former Webley employees located within this Court's subpoena power. The Court accords only some weight to Mr. Pradhan and the three former Webley employees, given their questionable relevancy. Accordingly, the Court finds this factor heavily favors transfer.

### 3. Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv,* 2019 WL 4743678, at *2. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute). The Fifth Circuit also recently affirmed that the location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*,

the evidence is physical in nature. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625 (5th Cir. 2022) (citing *In re Volkswagen*, 545 F.3d. at 316–17). The Federal Circuit has held, however, that it is error not to consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

Google asserts that it researches, designs, develops, and tests Google Assistant in NDCA. ECF No. 45 at 8. Supported by Mr. Rope's declaration, Google states that documents related to its products and services are created and maintained by the employees working on those products and services, so the relevant documents "would be created and maintained in Northern California." ECF No. 45-1 at ¶ 5. Google also alleges that the prior artists' evidence is also in the NDCA, as the companies that sold prior art systems were founded in Silicon Valley and the personnel remain in the NDCA. ECF No. 45 at 8.

Parus criticizes Google for not affirmatively identifying where hard copy documents are kept, in the NDCA or elsewhere. ECF No. 68 at 6. It also alleges that because Google employees can access documents from the Cloud, relevant documents are in effect "located in" the WDTX. ECF No. 68 at 6. Parus explains that when an employee interacts with Google's Cloud, that employee's computer traffic is routed through either a ███████████████████████ ███████████████████████ to reach the desired Google service. *Id.* ████████████████

██████████████████████████████████████████

██████████████████████████████

All the same, the Federal Circuit has time and again reminded this Court to look to where the custodians of relevant electronic documentation is, as they may bear on the relative ease of access to sources of proof. Nor need Google show that all relevant documents are in the transferee venue to support a conclusion that the location of relevant documents favors transfer. *In re Apple*, 979 F.3d at 1340. It remains that the custodians of relevant electronic documentation are in the NDCA. Google also provides sufficient evidence showing that documents related to its products and services are created and maintained by the employees working on those products and services, so the relevant documents are created and maintained in the NDCA.

Parus alleges that its documents "are located in WDTX," but headlines that Parus's documents "are or will be in Austin, Texas." *Id.* at 6–7. Parus's CEO, Mr. Reneau, in his deposition, confirmed that Parus will open its Austin office on September 1, 2022, contingent on the contractors completing the work. ECF No. 68-2 at 48:18-22. Parus identifies no specific material in the WDTX, and Mr. Reneau refers generally to Parus's "corporate documents" being in Austin, while "5 percent" of the documents remained in Illinois while Parus's Austin office was under construction. ECF No. 68-2 at 47:24-48:9. Though unclear whether its relevant documents are definitively in this District, the Court will accord some weight to the fact that Parus asserts that it was in the process of moving all documents to Austin, pending completion of its office, by September 1, 2022. The Court, though, accords Parus's documents less weight. *See In re Genentech*, 566 F.3d at 1345. ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

*Conclusion.* Accordingly, this factor heavily favors transfer.

        4.    <u>Practical Problems</u>

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

In weighing this factor, this Court must "consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). But "the mere co-pendency" of cases "in a particular district [does not] automatically tip the balance in the non-movant's favor." *In re Netscout*, 2021 WL 4771756, at *13. And when "suit[s] involve[] different defendants and different accused products," they are likely to involve "significantly different discovery, evidence, proceedings, and trial" and therefore "any 'incremental gains in keeping [the] case in the Western District of Texas' are insufficient 'to justify overriding the inconvenience to the parties and witnesses'" *Id.* (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)).

This case has not proceeded to a Markman hearing and has not yet matured to a stage where this factor biases toward transfer. Three other related Parus cases are also currently pending in this Court.[3] Parus alleges that transfer could result in different claim construction, duplication of effort, and slow resolution of Parus' claims. ECF No. 68 at 15. But all three of the other Parus cases also have pending motions to transfer, so the Court will not rule that those cases weigh against transfer. *See In re Google*, 2021 WL 5292267, at *3. ("copending suits are not to be over-weighed if they are also subject to motions to transfer."). Given that a lack of facts supporting or disfavoring transfer does not weigh against transfer, the Court will similarly not find that this scenario favors transfer either. *See Interactive Graphic Sols. LLC v. Microsoft Corp.*, No. W-21-CV-00462-ADA, 2022 WL 1314462, at *4 (W.D. Tex. Apr. 20, 2022).

*Conclusion.* Accordingly, this factor is neutral.

## C.    Public Interest Factors

### 1.    Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors support transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

---

[3] *Parus Holdings Inc. v. Microsoft Corp.*, No. 6:21-cv-570; *Parus Holdings Inc. v. Apple Inc.*, No. 6:21-cv-968; *Parus Holdings Inc. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-1073.

*Conclusion.* Both parties concede that this District's time-to-trial statistics beat the NDCA. ECF No. 45 at 11; *see also* ECF No. 68 at 13. Because the Federal Circuit has concluded that the speed of the transferee district should not alone outweigh all other factors, the Court finds that this factor weighs only slightly against transfer.

2.    Local Interest

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion.").

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper*

*Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

The Court is satisfied that events giving rise to this Action occurred in or near the NDCA, given Google's credible allegations that it "developed the accused features and products in this case." ECF No. 45 at 11. Google's headquarters are also in the NDCA. *Id.* Moreover, Google asserts that while maintaining an office in Austin, "no development work on Google Assistant occurred there." *Id.* Parus urges the Court to take notice of Google's Austin office and speculate that relevant witnesses could work there by trial. ECF No. 68 at 14. The Federal Circuit has repeatedly admonished this court to focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. Thus, Google's general presence in this District cannot outweigh Google's headquarters in the NDCA and that Google developed the accused features and products in the NDCA. The Court also accords no weight to Parus's headquarters in this District, given that its residence here is "recent and ephemeral." *See In re Juniper Networks*, 14 F.4th at 1320.

*Conclusion.* Accordingly, the Court finds that this factor heavily favors transfer.

### 3.   Familiarity of the Forum with Law-At-Issue

The parties do not dispute that this factor is neutral, and the Court agrees. This Court and the NDCA are both familiar with patent law.

    4.    <u>Conflict of Laws</u>

The parties do not dispute that this factor is neutral, and the Court agrees. To the extent any conflicts of law arise, both courts are equally capable of addressing them.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs heavily in favor of transfer |
| Relative ease of access to sources of proof | Weighs heavily in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Weighs heavily in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The Court gives the "practical problems" factor less weight because the Federal Circuit has held that judicial economic considerations from related cases cannot "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). Any judicial economy considerations would be insufficient to outweigh the clear benefits of transfer given the imbalance in the parties' presentations on the other private-interest and public-interest factors. *See In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *5. The Federal Circuit has also consistently told the Court to diminish the weight given to the docket-congestion factor. Google has shown that the NDCA is a clearly more convenient venue.

**IT IS ORDERED** that Defendant's Motion to Transfer to the Northern District of California, ECF No. 45, is **GRANTED**. The Court's Clerk is directed to transfer the above-captioned matter to the Northern District of California.

SIGNED this 29th day of November, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE